OPINION
{¶ 1} Appellant, Victor C. Brown, appeals from a final judgment of the Trumbull County Court of Common Pleas convicting him of six counts of felonious assault with a firearm specification. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The record shows that in the early morning hours of August 26, 2000, an individual in an automobile fired several shots in the direction of the Drink, a bar located in Niles, Ohio. According to witnesses, the perpetrator was a black male who was wearing an afro-style haircut and an orange shirt. Earlier in the evening, he was seen at the bar dancing with a woman in what was characterized as a "provocative" manner. At least one witness also claimed that he noticed the same man watching a fight in the parking lot around 2:00 a.m.
 {¶ 3} After the bar closed, several individuals remained behind to clean. They included the co-owners, Dominic Lofrano ("Dominic") and Nicholas Lofrano ("Nicholas"), Glenn Puckett ("Puckett"), Ronald Honkonen ("Honkonen"), Eric Bergman ("Bergman"), Shawn Cowen ("Cowen"), Charlotte Kainz ("Kainz"), and Brenda Holben ("Holben"). At approximately 3:00 a.m., Dominic and Puckett noticed a car with several unidentified individuals inside pull in the Drink's parking lot, drive around the rear of the building, and then pull around front. As the car slowed in front of the bar, a black male leaned out of a passenger-side window and fired roughly six shots. Fortunately, although several bullets struck the bar, no one inside the Drink was hit.
 {¶ 4} In an effort to identify the shooter, Bergman and Honkonen entered Holben's car and began following the suspect vehicle, sometimes reaching speeds in excess of one hundred m.p.h. During the chase, Bergman and Honkonen obtained the other car's license plate number and observed the perpetrator at least two other times. Eventually, Bergman and Honkonen turned a corner and saw the shooter standing in the middle of the road pointing a gun in their direction.
 {¶ 5} The two men continued driving until they reached a restaurant where an off-duty police officer was working security. Bergman and Honkonen told the officer what had occurred and provided him with a description of the shooter. Based on their description, a dispatch was issued for a tall, black male with a large afro-style haircut who was wearing an orange shirt.
 {¶ 6} Within minutes, a police officer with the Howland Township Police Department noticed appellant walking in a parking lot near the restaurant. When he was arrested, appellant, who had a six to eight inch afro, was wearing dark jeans and an orange shirt. The arresting officer transported appellant to the Howland Township police station while Bergman and Honkonen drove to the Niles police station to give a statement. Dominic, Nicholas, Kaintz, Puckett, Cowen, and Holben were already there giving their own statements.
 {¶ 7} Less than two hours later, Bergman, Honkonen, Nicholas, and Puckett drove to the Howland police station to identify appellant. When they arrived, appellant was seated in a holding cell by himself. The four men walked past the cell and identified appellant as the shooter.
 {¶ 8} Accordingly, the Trumbull County Grand Jury indicted appellant on six counts of felonious assault, in violation of R.C.2903.11(A)(2). Each count included a firearm specification under R.C.2941.146.
 {¶ 9} The matter proceeded to a jury trial beginning on April 10, 2002. After considering the evidence, the jury found appellant guilty of all six charges. The trial court accepted the jury's verdicts and sentenced appellant to six years in prison on each count of felonious assault, with the sentences to run concurrently. The court also ordered appellant to serve five years for the firearm specification, which he was to serve consecutive to the already imposed concurrent six-year prison term.
 {¶ 10} From this decision, appellant filed a timely notice of appeal with this court. He now submits the following assignments of error for our consideration:
 {¶ 11} "[1.] The trial court erred by failing to grant appellant's motion to suppress.
 {¶ 12} "[2.] The trial court erred by permitting appellee to question appellant, over objection, as to the reason appellant did not attempt to explain his innocence to police officers after his arrest, denying appellant his right to due process as expressed in the Ohio and United States Constitutions.
 {¶ 13} "[3.] The trial court erred by denying the appellant's motion to dismiss when the record reveals that more than ninety days had passed between the appellant's initial incarceration and the day that the trial began.
 {¶ 14} "[4.] The trial court erred by amending the indictment, to the prejudice of appellant.
 {¶ 15} "[5.] The appellant's convictions are against the manifest weight of the evidence."
 {¶ 16} Under his first assignment of error, appellant argues that the trial court erred by denying his motion to suppress. He maintains that the trial court should have suppressed both the pretrial and subsequent in-court identifications made by the witnesses because: (1) the show-up identification was inherently suggestive; (2) the witnesses who identified him only had a limited opportunity to view the shooter; (3) the descriptions of the perpetrator were not consistent; and (4) the witnesses had discussed the possible identity of the shooter prior to identifying appellant.
 {¶ 17} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366. On review, an appellate court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting such factual findings as true, the reviewing court must then independently determine, as a matter of law, whether or not the applicable legal standard has been met. Id.
 {¶ 18} In Neil v. Biggers (1972), 409 U.S. 188, the United States Supreme Court held that in order to determine the admissibility of a pretrial identification of a suspect by a witness, a trial court must engage in a two-step analysis. The court first must determine whether the identification procedure was unduly suggestive. If the procedure was suggestive, the court then must proceed to the second step in which it ascertains whether there was a substantial likelihood of misidentification. Biggers at 197-199.
 {¶ 19} The burden is on the defendant to prove that the procedure employed was unfairly suggestive and that the resulting identification was unreliable based on the totality of the circumstances standard adopted in Biggers. State v. Green (1996), 117 Ohio App.3d 644, 652-653;State v. McDade (Sept. 25, 1998), 11th Dist. No. 97-L-059, 1998 WL 682360, at 4. If the defendant fails to satisfy the first part of this burden, neither the trial court nor an appellate court need consider the totality of the circumstances. Green at 653; McDade at 4. However, if the defendant satisfies his initial burden of proof, the burden of persuasion is upon the state to show that the evidence is valid. State v. Kuzma
(Dec. 3, 1993), 11th Dist. No. 93-P-0019, 1993 Ohio App. LEXIS 5768, at 5, quoting State v. Hensley (1992), 75 Ohio App.3d 822, 828-829.
 {¶ 20} Even if the identification procedure contained notable flaws, this alone does not necessarily preclude the admissibility of the subsequent in-court identification. State v. Moody (1978),55 Ohio St.2d 64, 67, citing State v. Barker (1978), 53 Ohio St.2d 135,142-143. In order to suppress identification testimony, there must be "`a very substantial likelihood of irreparable misidentification.'" State v.Jells (1990), 53 Ohio St.3d 22, 27, quoting Simmons v. United States
(1968), 390 U.S. 377, 384.
 {¶ 21} Moreover, an unnecessarily suggestive identification procedure does not run afoul of due process if the identification is otherwise imbued with sufficient indicia of reliability. The critical issue is whether the identification is reliable under the totality of the circumstances, notwithstanding the suggestiveness of the confrontation procedure. See Biggers at 199 (observing that the central question is whether "the identification was reliable even though the confrontation procedure was suggestive"). Therefore, even if the procedure was suggestive, the challenged identification is still admissible so long as it is reliable. Moody at 67. See, also, Green at 652.
 {¶ 22} Here, Bergman, Honkonen, Nicholas, and Puckett drove to the Howland police station to identify appellant. Once there, they were asked to walk by a holding cell in which no other suspect than appellant was present. After doing so, all four men then identified him as the shooter.
 {¶ 23} We agree with appellant that the procedure used in this case was unnecessary and unduly suggestive. Courts in this state have repeatedly held that showing a single suspect to a person for the purpose of identification "`has been widely condemned.'" State v. Broom (1988),40 Ohio St.3d 277, 284, quoting Stovall v. Denno (1967), 388 U.S. 293,302. See, also, State v. Gross (2002), 97 Ohio St.3d 121,2002-Ohio-5524, at ¶ 24; State v. Henton (Aug. 30, 1996), 11th Dist. No. 95-A-0056, 1996 WL 535196, at 3; State v. Platt (Dec. 16, 1994), 11th Dist. No. 94-A-0015, 1994 WL 721772, at 4.
 {¶ 24} Having said that, "pre-trial identifications made subsequent to an impermissibly suggestive procedure are nevertheless admissible if the identification itself is deemed reliable." Henton at 4. The primary focus becomes whether, under the totality of the circumstances, the identification is reliable, even if the confrontation procedure was suggestive. Id. The factors to consider include:
 {¶ 25} "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." Id.
 {¶ 26} After carefully reviewing the evidence, we conclude that the trial court did not err in denying appellant's motion to suppress as the witnesses' identifications were reliable, and there is not a substantial likelihood of misidentification. Although the witnesses' opportunity to view the shooter may have been brief, there was nothing obstructing their view during the commission of the crime. The parking lot at the Drink was well-lit by neighboring businesses; several of the witnesses recognized the shooter as a person present at the bar earlier in the evening; and there is nothing to indicate that the shooter was wearing a disguise or was otherwise concealing his identity.
 {¶ 27} Furthermore, the witnesses provided a description of the shooter prior to the show-up identification that matched appellant's appearance at the time of his arrest, including his skin color, hair, and clothing. Although the descriptions of the shooter provided by the witnesses were not entirely consistent with each other, there were enough similarities between them to substantiate their credibility. Moreover, the witnesses were very confident in their respective identifications of appellant as the shooter. Finally, the identifications occurred less than two hours after the shooting. Platt at 4 (holding that "a prompt showing of the suspect tends to insure the accuracy of the identification."). Accordingly, we conclude that although the show-up identification procedure was suggestive, the totality of the circumstances leads us to conclude that the procedure "did not create a substantial likelihood of irreparable misidentification." Gross at ¶ 25.
 {¶ 28} Appellant also challenges the in-court identifications made by those witnesses who did not identify appellant at the Howland police station. "The rationale for excluding a tainted pretrial identification is to protect a defendant from misconduct by the state." State v. Brown
(1988), 38 Ohio St.3d 305, 310. However, "[a]bsent state involvement contributing to the witness's pretrial exposure to the defendant, due process guarantees are not implicated." State v. Foster (Dec. 21, 2001), 11th Dist. No. 2000-T-0033, 2001 WL 1647177, at 9. Accordingly, if no state action is involved, any alleged suggestiveness concerning the identification goes to the weight and credibility of the testimony, rather than its admissibility. Id.
 {¶ 29} In the case at bar, there is no evidence that state action somehow affected the in-court identifications made by those witnesses who were not present at the Howland police station. The fact that the witnesses discussed the possible identity of the shooter prior to making an identification does not alter our analysis. The witnesses were subject to cross-examination at trial and appellant had an opportunity to question their reliability. Appellant's first assignment of error has no merit.
 {¶ 30} In his second assignment of error, appellant contends that the trial court abused its discretion when it permitted the state to question him about his failure to express his innocence to the police after his arrest. Appellant maintains that even though he was in custody, he was never informed of his Miranda rights. Because he was never so advised, appellant argues that the state should not have been allowed to use his silence against him to establish his guilt.
 {¶ 31} During the trial, appellant took the stand as part of his defense. On cross-examination, appellant testified that he did not know why he had been arrested. When the prosecutor asked him if he had provided an explanation concerning his activities on the night in question, appellant's attorney objected. The parties then held a side bar discussion with the trial court, which then overruled appellant's objection and permitted the state to question appellant about his silence.
 {¶ 32} In Doyle v. Ohio (1976), 426 U.S. 610, 619, the United States Supreme Court held that the state's use of the defendant's post-Miranda silence to impeach his trial testimony violated the Due Process Clause of the Fourteenth Amendment. Because a defendant's post-Miranda silence was exercise of those rights, it would be "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial[.]" Id. at 618. See, also, State v. Leach,150 Ohio App.3d 567, 2002-Ohio-6654, at ¶ 21.
 {¶ 33} However, in Fletcher v. Weir, (1982), 455 U.S. 603, 607, the United States Supreme Court held that "[i]n the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest [sic] silence when a defendant chooses to take the stand" In other words, using a defendant's post arrest silence to impeach his trial testimony does not violate due process when the defendant never received Miranda warnings. But, see, State v.Johnson (July 3, 1997), 11th Dist. No. 96-L-012, 1997 WL 401529, at 6 (holding that the use of a defendant's post-Miranda silence during cross-examination to impeach his trial testimony violates the principles of Doyle).
 {¶ 34} Here, appellant chose to testify at trial. He also admitted that he never received his Miranda warnings, and there is no evidence in the record to indicate any other government action that would have induced appellant to remain silent. See, e.g., Jenkins v. Anderson
(1980), 447 U.S. 231, 240 (holding that the fundamental unfairness at issue in Doyle is not present where there is no government action encouraging a defendant to remain silent prior to arrest.).[1]
Therefore, in light of the United States Supreme Court's holding inFletcher, we cannot say that the trial court abused its discretion in permitting the state to cross-examine appellant about his post-arrest silence. State v. Hannah, 2d Dist. No. 19208, 2003-Ohio-5525, at ¶ 32 (holding that because the defendant freely chose to take the stand, the use of his post-arrest silence for impeachment purposes did not violate due process); State v. Maggard (June 4, 1999), 2d Dist. No. 17198, 1999 Ohio App. LEXIS 2532, at 36 (holding that "if the defendant chooses freely and without coercion to speak on his own behalf, fairness dictates that his credibility can be challenged by prior inconsistent behavior.").
 {¶ 35} Moreover, appellant's reliance on State v. Combs (1991),62 Ohio St.3d 278, 281, in which the Supreme Court of Ohio concluded that a defendant's silence could not be used as evidence of guilt if he was in custody but had not been given his Miranda warnings, is misplaced. The defendant in Combs did not testify at trial and, therefore, his credibility was not brought into question. Also, the purpose of the state's cross-examination in this case was not to introduce substantive evidence of appellant's guilt through his silence; rather, the purpose was to challenge the veracity of appellant's trial testimony. Appellant's second assignment of error is not well-taken.
 {¶ 36} In assignment of error three, appellant argues that the trial court erred in overruling his motion to dismiss because the state failed to bring him to trial within the statutorily prescribed time limit in R.C. 2945.71. Appellant submits that because he was held in jail without bail he should have been brought to trial within ninety days of his arrest. We disagree.
 {¶ 37} R.C. 2945.71(C)(2) provides that a defendant charged with a felony must be brought to trial within 270 days after his arrest. In making this calculation, each day a defendant is incarcerated in jail in lieu of bail on the pending charge is counted as three days. R.C.2945.71(E). However, if a valid parole holder has been placed against the defendant, so that he is not being held in jail solely on the pending charge, the defendant is not entitled to the triple-count provision of R.C. 2945.71(E). State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, at ¶ 38; State v. Brown, 64 Ohio St.3d 476, 479, 1992-Ohio-96.
 {¶ 38} At the hearing on appellant's motion to dismiss, the prosecutor informed the trial court that appellant was also being held in jail on a parole holder for other charges in a different jurisdiction. Appellant's attorney did not dispute the existence of a parole holder.[2]
In fact, he acknowledged that a parole holder had been placed on appellant and that a preliminary hearing had been held in the other case. The trial court then based its ruling on its belief that there was such an order. Appellant did not object to the court's ruling, and it is only now on appeal that he claims there is no evidence of a valid parole holder.
 {¶ 39} If appellant wanted to challenge the existence of the parole holder, he should have raised his concerns with the trial court. Having failed to do so, "we must presume the set of facts that validates, rather than invalidates, the judgment." State v. Brandon (1989), 45 Ohio St.3d 85, syllabus (holding that "[w]here questions arise concerning a prior conviction, a reviewing court must presume all underlying proceedings were conducted in accordance with the rules of law and a defendant must introduce evidence to the contrary in order to establish a prima-facie showing of constitutional infirmity."). See, also, Brown at 481; Statev. Patterson (Mar. 29, 1996), 11th Dist. No. 95-T-5207, at 4 (holding that "if the defendant's counsel does not challenge the veracity of the prosecutor's statement, a trial court can rely upon that statement as if it was actual evidence of the existence of the parole holder").
 {¶ 40} Obviously, it would have been helpful if the prosecutor had provided the trial court with some other evidence as an exhibit to establish the existence of a valid parole holder. Having said that, there was sufficient evidence of the parole holder for the trial court to deny appellant's motion to dismiss, as the prosecutor's statement establishing the existence of the parole holder went unchallenged. Accordingly, appellant was not entitled to the triple-count provision of R.C. 2945.71(E). Appellant's third assignment of error is without merit.
 {¶ 41} Under assignment of error four, appellant argues that the trial court erred in amending the indictment during the sentencing hearing. He maintains that because the indictment did not contain an essential element of the charge, the trial court's amendment was improper as it resulted in a mandatory five-year prison sentence for the firearm specification.
 {¶ 42} When the Trumbull County Grand Jury indicted appellant, it included a firearm specification for each charge that provided:
 {¶ 43} "THE GRAND JURORS further find and specify pursuant to Ohio Revised Code Section 2941.146, that the said VICTOR C. BROWN did, at the time of his commission of the crime of Felonious Assault, have a firearm on or about his person or under his control, and did purposely or knowingly cause or attempt to cause the death of or physical harm to another and that was committed by discharging a firearm from a motor vehicle, said firearm being defined in Section 2923.11 of the Ohio Revised Code."
 {¶ 44} At the sentencing hearing, appellant's attorney advised the trial court that the indictment failed to include the following: "* * * from a motor vehicle other than a manufactured home." Upon the state's request, the trial court amended the indictment to include the omitted language.
 {¶ 45} Crim.R. 7(D) provides in part that:
 {¶ 46} "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. * * *"
 {¶ 47} "The rule clearly permits errors of omission to be corrected during or after the trial, as long as the amendment to the indictment makes no change in the name or identity of the crime charged." State v.Chapman (Mar. 17, 2000), 11th Dist. No. 98-P-0075, 2000 WL 286684, at 7. In State v. O'Brien (1987), 30 Ohio St.3d 122, paragraph two of the syllabus, the Supreme Court of Ohio held:
 {¶ 48} "An indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment."
 {¶ 49} Here, the amendment neither changed the name or the nature of the indictment, nor added any elements to the offense. Instead, it simply clarified the firearm specification applicable to appellant's case. Moreover, appellant was not prejudiced by the amendment, as it was clear he was accused of discharging a firearm from a motor vehicle and not a manufactured home, and the jury instructions and verdict forms included the missing language. See, generally, State v. Waites (Dec. 20, 1996), 11th Dist. No. 93-L-009, 1996 WL 757524, at 7. Appellant's fourth assignment of error is not well taken.
 {¶ 50} In his final assignment of error, appellant contends that the jury's verdicts were against the manifest weight of the evidence. He essentially argues that because the identifications were unreliable, there was no evidence that he committed the crimes he was accused of, and that the jury created a manifest miscarriage of justice by finding him guilty.
 {¶ 51} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175. See, also, State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 52} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 53} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120,123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 3. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 54} In the case at bar, the jury was clearly in the best position to view the witnesses and determine their credibility. Obviously, the jury ultimately believed that the state's witnesses were more credible than appellant. And despite the fact that much of the weight of the testimony presented rested on credibility, there is nothing to suggest that the testimony given by the state's witnesses was incredible or unbelievable. Accordingly, this court will not disturb those findings on appeal as the credibility of each witness was a critical issue for the trier of fact to determine. State v. Ready
(2001), 143 Ohio App.3d 748, 758 N.E.2d 1203. Appellant's fifth assignment of error is without merit.
 {¶ 55} In light of the foregoing analysis, appellant's five assignments of error have no merit. The judgment of the trial court, therefore, is affirmed.
Judgment affirmed.
Diane V. Grendell and Cynthia Westcott Rice, JJ., concur.
[1] In Fletcher, the Supreme Court explicitly found that the arrest itself was not the government action contemplated as inducing a defendant to remain silent. Id. at 605-606.
[2] The prosecutor made similar statements at the November 14, 2000, December 19, 2000, and January 2, 2001 pretrial hearings. As with the suppression hearing, appellant's attorney did not dispute the prosecutor's claim.