[Cite as *State v. Johnson*, 2023-Ohio-4093.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NOS. 2023-L-006**<br>**2023-L-007** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeals from the<br>Court of Common Pleas |
| KERRY D. JOHNSON, JR., | |
| Defendant-Appellant. | Trial Court Nos. 2022 CR 000320<br>2022 CR 000857 |

**O P I N I O N**

Decided: November 13, 2023
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mandy J. Gwirtz*, Gwirtz Law, LLC, 20020 Lakeshore Boulevard, Euclid, OH 44123 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Kerry Johnson, appeals his convictions after jury trials in Lake County Court of Common Pleas Case Numbers 2022-CR-320 and 2022-CR-857. The conviction in the former was for Trafficking in a Fentanyl-Related Compound; in the latter for Trafficking in Cocaine, both felonies of the fifth degree in violation of R.C. 2925.03(A)(1). We sua sponte consolidated his cases on appeal.

{¶2} Appellant has raised five assignments of error arguing the following: (1) the trial court erred in 2022-CR-320 by sustaining the State's objections to questioning a

witness about prior drug use for the purpose of impeaching the witness' ability to recall events; (2) and (3) that his convictions in both cases are against the manifest weight of the evidence and not supported by sufficient evidence; (4) the trial court erred in 2022-CR-320 by failing to exclude prior bad act testimony from a witness that he had bought drugs from appellant on other occasions; and (5) the trial court erred by crediting him with 117 days jail credit in 2022-CR-857 and only two days jail credit in 2022-CR-320, thus failing to credit him for 115 days credit in 2022-CR-320.

{¶3} Having reviewed the record and the applicable caselaw, we find appellant's assignments of error are without merit. First, the trial court did not abuse its discretion by excluding testimony about a confidential informant's drug use after he conducted controlled drug buys because that drug use was not clearly probative of the informant's character for truthfulness or untruthfulness under Evid.R. 608(B)(1). Next, appellant's convictions in both criminal trials were supported by the manifest weight of the evidence where the evidence in both cases demonstrated that appellant sold drugs to confidential informants. Further, the trial court did not err by allowing testimony about a confidential informant engaging in prior drug sales with appellant when appellant's trial counsel invited the inquiry that elicited the testimony. The evidence about appellant's prior drug sales with the confidential informant went to appellant's knowledge of the meaning of communications between appellant and the confidential informant and was admissible under Evid.R. 404(B). Finally, appellant received the correct jail time credit. He was sentenced to serve consecutive sentences and received jail time credit only once, and for each day he was incarcerated.

2

Case Nos. 2023-L-006, 2023-L-007

**{¶4}** Therefore, we affirm the judgments of the Lake County Court of Common Pleas.

## Substantive and Procedural History

**{¶5}** On March 28, 2022, appellant was indicted in Case Number 2022-CR-320 on two counts Trafficking in a Fentanyl-Related Compound, felonies of the fifth degree in violation of R.C. 2925.03(A)(1). Count One related to conduct alleged to have occurred on August 11, 2021, and Count Two related to conduct alleged to have occurred on August 16, 2021.

**{¶6}** Appellant entered not guilty pleas on both counts, posted bond and was released from jail.

**{¶7}** On August 16, 2022, appellant was indicted in Case Number 2022-CR-857 on one count of Trafficking in Cocaine, a felony of the fifth degree in violation of R.C. 2925.03(A)(1). This indictment was for conduct that occurred on July 28, 2022, while he was released on bond. Appellant pled not guilty. On August 19, 2022, the trial court revoked appellant's bond in 2022-CR-320, and he remained in jail on both cases.

**{¶8}** Appellant had separate jury trials on both cases, in which the following evidence was adduced:

**{¶9}** In 2022-CR-320, Lieutenant Brad Kemp, of the Lake County Narcotics Agency, oversaw a controlled operation to buy drugs from appellant. A confidential informant, Kenneth Caudell, agreed to buy cocaine from appellant. Special Agent 92 acted as Caudell's handler.

**{¶10}** Caudell reached out to the Lake County Narcotics Agency voluntarily and had no pending charges at the time he did so. However, his girlfriend was facing criminal

3

charges and he hoped to assist in her charges being reduced. Caudell admitted to having two prior falsification convictions.

{¶11} Caudell suggested that he could do a controlled drug buy from appellant. He said he had known appellant for 15 years. The Lake County Narcotics Agency arranged for Caudell to engage in two controlled drug buys. The first was on August 11, 2021, and the second on August 16, 2021.

{¶12} On August 11, Caudell contacted appellant to say he wanted to buy $40.00 worth of heroin from appellant.

{¶13} Before going to the drug buys, agents searched Caudell to make sure he had no drugs, weapons, or extra money. Agents gave Caudell a recording device to record audio and visual evidence of the drug buy.

{¶14} Caudell rode his bike to meet with appellant and "did a quick exchange money for the drugs" through the driver's window of appellant's car. Caudell then rode his bike back to Special Agent 92 and gave him the drugs and returned the recording device.

{¶15} On August 16, Caudell arranged to buy $80.00 worth of heroin from appellant. Caudell met Special Agent 92 and engaged in the same process to prepare for the controlled drug buy. Caudell again rode his bike to meet appellant. However, he said that it was raining, so he left the meeting place with Special Agent 92 and rode to his house nearby to pick up an umbrella. Caudell said that he then walked to the drug buy with appellant and exchanged the $80.00 for the heroin. After making the exchange, Caudell said he went back to his house to return the umbrella and that he rode his bike back to the meeting place with Special Agent 92.

4

Case Nos. 2023-L-006, 2023-L-007

{¶16} During the August 16 controlled buy, the recording device malfunctioned and the video was not available. However, the audio was properly recorded.

{¶17} After the August 16 controlled buy, Caudell was arrested and jailed. He was placed in the same jail unit as appellant and appellant learned that Caudell had informed against him. Caudell said that appellant asked him to write a statement that he did not buy drugs from appellant. Caudell said he did so because he did not want problems while in jail with appellant. In that statement, Caudell said he found the drugs outside near his car.

{¶18} The drugs Caudell turned over to Special Agent 92 were sent for further testing and confirmed to be 0.44 grams of heroin from the August 11 controlled buy and 0.72 grams of heroin from the August 16 controlled buy.

{¶19} The jury found appellant guilty on Count One and not guilty on Count Two. Sentencing was deferred pending the outcome of the trial in Case Number 2022-CR-857.

{¶20} In 2022-CR-857, Lieutenant Kemp oversaw a separate controlled operation to buy drugs from appellant. A confidential informant, Kurt Snyder, agreed to buy cocaine from appellant. Special Agent 92 acted as Snyder's handler.

{¶21} Snyder began working for the Lake County Narcotics Agency as a confidential informant in order to receive a positive recommendation for his own pending drug possession charges. He hoped to have his charges dismissed or reduced. After conducting several controlled drug buys in unrelated cases, the Lake County Narcotics Agency also began to pay Snyder between $40.00-$60.00 for his cooperation on each drug buy.

5

{¶22} Snyder suggested that he could do a controlled drug purchase from appellant. He said he had known appellant for ten years.

{¶23} On July 28, 2022, Snyder engaged in a controlled buy with the cooperation of the Lake County Narcotics Agency. Snyder texted and called appellant to arrange to buy $100.00 worth of cocaine from appellant.

{¶24} Before going to the drug buy, agents searched Snyder to make sure he had no drugs, weapons, or extra money. Agents gave Snyder a recording device to record audio and visual evidence of the drug buy.

{¶25} Snyder went to a house and found appellant at the front porch. Snyder was smoking a cigarette while appellant was smoking marihuana. Appellant asked for a hit from the cigarette and Snyder asked for a hit of appellant's joint. The two passed the cigarette and joint to each other, took a hit, and passed them back. Snyder gave appellant the money and appellant provided the cocaine. However, there was not enough cocaine for the agreed $100.00 purchase and appellant gave Snyder $10.00 in change. Snyder then left and gave the cocaine, $10.00 in change, and the recording device to Special Agent 92. During the exchange of money and drugs, Snyder placed the recording device face down on a table, obscuring the video recording of the transaction. Snyder denied purposefully trying to hide the transaction and said it is difficult to point the camera at a person during a drug transaction without arousing suspicion.

{¶26} The drugs Snyder turned over to Special Agent 92 were sent for further testing and confirmed to be 0.31 grams of cocaine.

{¶27} The jury found appellant guilty.

6

{¶28} On December 12, 2022, the trial court sentenced appellant on both cases. Appellant refused to complete the necessary paperwork for a Pre-Sentence Report. The trial court imposed 11-month sentences on each case to be served consecutively for a total of 22 months in prison. The court determined appellant had 117 days jail credit in 2022-CR-857 and two days of jail credit for 2022-CR-320. The Court said appellant "served two days in [2022-CR-320] that were separate and apart from the other time that he served. The fact of the matter is the remaining time was on both cases at the same time and with consecutive sentences, he's only entitled to credit on one of the cases. So two days on 22CR320. One hundred seventeen days on 22CR857."

{¶29} Appellant timely appealed both cases. We sua sponte consolidated his appeals for review.

**Assignments of Error and Analysis**

{¶30} Appellant's first assignment of error states:

{¶31} "[1.] THE TRIAL COURT ERRED WHEN IT BARRED THE DEFENSE FROM CROSS EXAMINING THE STATE'S WITNESS REGARDING HIS ONGOING DRUG USE IN VIOLATION OF THE DEFENDANT-APPELLANT'S RIGHTS TO DUE PROCESS AND FAIR TRIAL AND TO CONFRONT WITNESSES AS GUARANTEED UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

{¶32} Appellant argues that the trial court erred in 2022-CR-320 when it sustained an objection to the question his trial counsel asked Caudell about Caudell's drug arrests and his habitual drug use. Appellant argues that this evidence was admissible under

7

Evid.R. 608(B). He asserts it went to Caudell's ability to recall, remember, and articulate what happened; that is, to impeach him on credibility and memory. The trial court sustained the State's objections to this evidence and, during a sidebar, said the evidence was not relevant and not suitable for impeachment purposes. Appellant made a proffer that he would have introduced evidence that Caudell had criminal charges that arose after the controlled buys and that he had tested positive for methamphetamine use in May and August 2022.

{¶33} While "'cross-examination of a witness is a matter of right,' the "'extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.'" *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993), quoting *Alford v. United States*, 282 U.S. 687, 691, 51 S.Ct. 218, 75 L.Ed. 624 (1931). The determination to admit or exclude evidence lies within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Miller*, 11th Dist. Trumbull No. 2014-T-0061, 2015-Ohio-956, ¶ 14. "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.*' State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678, [148 N.E. 362] (1925)." *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 9. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.,* quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has

8

been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.,* quoting *Beechler* at ¶ 67.

**{¶34}** Evid.R. 404(A)(3) contains an exception to the general prohibition on character evidence, providing that "[e]vidence of the character of a witness on the issue of credibility is admissible as provided in Rules 607, 608, and 609." Evid.R. 608(B) provides, in relevant part, that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *."

**{¶35}** We find no error in the exclusion of appellant's proffered cross-examination of Caudell. Evid.R. 608(B) requires "a high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness of the witness before the trial court will allow such cross-examination." *State v. Norwood*, 11th Dist. Lake No. 2000-L-146, 2002 WL 445839, *3 (Mar. 22, 2002); *see* 1980 Staff Notes to Evid.R. 608.

**{¶36}** Cross-examination of a witness as to whether drug use tended to affect the credibility of the witness to observe matters about which he testifies is relevant. *Id.* "However, cross-examination of a witness as to *general* drug usage to show that he was a person unworthy of belief merely because he was of such character may not be clearly probative of truthfulness in a particular case." *Id; see State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 101.

Case Nos. 2023-L-006, 2023-L-007

{¶37} Appellant's proposed cross-examination did not seek to introduce evidence that Caudell was intoxicated at the time of the controlled drug buys. Such evidence would have been probative of Caudell's ability to witness and observe the matters about which he testified. Instead, appellant's proposed cross-examination sought to impeach Caudell about his character for truthfulness or untruthfulness. Appellant sought to introduce specific instances of Caudell's conduct to show why he might have had poor memory of the controlled drug buys. This line of questioning was not probative of Caudell's truthfulness, and the trial court did not abuse its discretion in excluding appellant's cross-examination.

{¶38} Accordingly, appellant's first assignment of error is without merit.

{¶39} Appellant's second and third assignments of error state:

{¶40} "[2.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFNDANT-APPELLANT WHEN IT RETURNED A VERDICT OF GUILTY AGAINST THE MANIFEST WIEGHT OF THE EVIDENCE."

{¶41} "[3.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT IN DENYING HIS MOTION FOR ACQUITTALS MADE PURSUANT TO CRIM.R. 29(A)."

{¶42} Appellant argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. For ease of discussion, we address these two assignments together.

{¶43} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury's verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380,

10

386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶44} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the State's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

{¶45} When evaluating the weight of the evidence, we review whether the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other indicated clearly that the party having the burden of proof was entitled to a verdict in its favor, if, on weighing the evidence in their minds, the greater amount of credible evidence sustained the issue which is to be established before them. "Weight is not a question of mathematics but depends on its effect in inducing belief." *Thompkins* at 387. Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates the evidence's persuasiveness. *Id.* The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs

11

heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

**{¶46}** The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with the prosecution or the defendant. *Id.*, quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus.

**{¶47}** A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

**{¶48}** In each of his cases, appellant was convicted for violating R.C. 2925.03(A)(1) which provides that no person shall sell a controlled substance.

**{¶49}** In 2022-CR-320, the State presented testimony from Caudell, who worked as a confidential informant to buy heroin from appellant. The August 11, 2021 controlled drug buy was monitored by the Lake County Narcotics Agency and done under their supervision and control. Special Agent 92 searched Caudell before the buy to confirm he had no weapons or drugs on him, Caudell went straight to the agreed upon location,

12

captured appellant on video taking money from him, and Caudell returned with $40.00 worth of heroin. Although the video did not capture appellant handing drugs to Caudell, Caudel testified that is what occurred.

{¶50} The jury had evidence of Caudell's prior falsification convictions and his desire to work as a confidential informant to assist his girlfriend in her criminal case. It was free to believe, and weigh, all or none of his testimony. The jury was free to believe Caudell's explanation of why he wrote a letter claiming he found the drugs near his car. Caudell said he only wrote the letter because he was in the same jail pod as appellant and felt compelled to do so. Further supporting the jury's careful weighing of the evidence is that the jury found appellant not guilty on Count 2, the August 16, 2021 controlled drug buy, where the video malfunctioned and where Caudell made unplanned detours to his house before and after the drug buy. We will defer to the weight and factual findings made by the factfinder.

{¶51} In 2022-CR-857, the State presented testimony from Snyder who worked as a confidential informant to buy cocaine from appellant. Snyder worked as a confidential informant to obtain a favorable recommendation in his own criminal case, however, the jury was aware of this and free to weigh Snyder's credibility. The July 28, 2022 controlled drug buy was monitored by the Lake County Narcotics Agency and done under their supervision and control. Special Agent 92 searched Snyder before the buy to confirm he had no weapons or drugs on him, Snyder drove to meet appellant, interacted with him at the house, and captured elements of the interaction on video. Snyder arranged to buy $100.00 worth of cocaine, but the amount appellant provided was short, so Snyder returned with $90.00 worth of cocaine and $10.00 in change.

13

{¶52} Although Snyder did not capture the moment of the drug purchase on camera, he explained that it was difficult to be inconspicuous with the camera while engaging in the drug buy. Appellant argues that Snyder is unreliable because he violated the Lake County Narcotics Agency rules by taking drugs during his interaction with appellant. However, the drug use was minimal, involving only one hit from a marihuana cigarette, and was done as an informal greeting between appellant and Snyder. Special Agent 92 explained that there may be situations where a confidential informant must engage in illegal drug use as a means to preserve their cover.

{¶53} In addition, appellant argues that the special agents failed to identify that Snyder was under the influence of drugs due to his drug use. However, appellant presented no evidence to suggest appellant was under the influence of drugs after taking one hit from a marihuana cigarette. Special Agent 92 denied being able to smell an odor of marihuana on Snyder and said that he did not notice any signs of impairment.

{¶54} Neither of appellant's cases are the exceptional case in which the evidence weighs heavily against the conviction.

{¶55} Accordingly, appellant's second and third assignments of error are without merit.

{¶56} Appellant's fourth assignment of error states:

{¶57} "[4.] THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY FAILING TO EXCLUDE TESTIMONY REGARDING THE DEFENDANT-APPELLANT'S PRIOR BAD ACTS, IN VIOLATION OF THE DEFENDANT-APPELLANT'S DUE PROCESS RIGHTS AND RIGHTS TO FAIR TRIAL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE

14

UNITED STATES CONSTITUTION AND SECTIONS 5 AND 10, ARTICLE I OF THE OHIO CONSTITUTION."

{¶58} Appellant argues that the trial court erred in 2022-CR-320 when it allowed the State to introduce evidence that Caudell had purchased drugs from appellant in the past. Appellant objected to this testimony and moved for a mistrial arguing the trial court violated Evid.R. 404 by improperly permitting prior bad act evidence.

{¶59} Evid.R. 404 governs the admissibility of character evidence. Evid.R. 404(A) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions: (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible * * *." Evid.R. 404(A) is a general prohibition on using evidence of a person's character to prove he or she acted "'in conformity therewith on a particular occasion.'" *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 71.

{¶60} Evid.R. 404(B) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. * * * This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

{¶61} The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law. *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. A trial court is precluded from admitting improper character evidence under Evid.R.

15

Case Nos. 2023-L-006, 2023-L-007

404(B), but it has discretion to allow other-acts evidence that is admissible for a permissible purpose. *Graham* at ¶ 72.

**{¶62}** The Supreme Court of Ohio has set forth a three-part analysis for determining the admissibility of other-acts evidence. *Id*; *see State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. To be admissible, the evidence must: (1) be relevant under Evid.R. 401; (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose in accordance with Evid.R. 404(B); (3) the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice pursuant to Evid.R. 403. *Graham* at ¶ 72.

**{¶63}** On cross-examination, defense counsel asked Caudell if any of his text messages to appellant directly referenced drugs. Caudell said no. Trial counsel then asked about his reference to "forty," and asked if that could be a reference to owing appellant money. Caudell said that he did not owe appellant money and that he was referring to buying $40.00 worth of heroin from appellant. Trial counsel pressed Caudell about the vague nature of the messages and said the message thread "Doesn't say about, ""Hey, look, are you selling drugs?'" "'Are you doing anything?'" Caudell answered "No. That's how we did it."

**{¶64}** On redirect, the State asked Caudell:

Q. "And what did you tell [appellant] you wanted?"

A. "A forty."

Q. And how would he know what you meant by "forty"?

A. That's the way I've always done it. I'd say forty, eighty, hundred. He knew what I wanted. He knew I wanted a boy which is heroin.

16

* * *

Q. Had you had experience with purchasing narcotics from Kerry Johnson before this?

A. Yes.

Q. And what did you purchase from him in the past?

A. Heroin.

{¶65}   Appellant then objected and a side bar was held where trial counsel argued the testimony was inappropriate prior bad act testimony introducing evidence appellant had dealt drugs in the past and was acting in conformity therewith in this case. The trial court said,

> You brought up this issue on cross, how would he know what he meant by forty, all that stuff. That opened the door to prior dealings, how they worked before in the past so he would know what was going on. I mean you cross-examined about this stuff. Making it sound like he was innocent of this stuff. How would your client know what you are talking about. Well it was because they had done this before in the past. He would know what he wanted because of their past experiences.

{¶66}   We agree with the trial court, appellant opened the door to the testimony about appellant and Caudell's history. *See State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 74. Appellant's trial counsel put the meaning of Caudell's communication with appellant at issue. Having done so, he "could not limit the subject to only those points of evidence that were in its favor." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 77.

{¶67}   The State's redirect questioning of Caudell was in response to the questions appellant's trial counsel asked which attempted to cast doubt on whether Caudell had actually communicated an intent to buy drugs from appellant. Trial counsel's cross-

17

examination questions attempted to present an innocent explanation for Caudell's communications and the State's redirect responded by addressing how Caudell's prior history with appellant informed the nature of their communications.

{¶68} This evidence was relevant under Evid.R. 401 and presented for a legitimate purpose in accordance with Evid.R. 404(B). The evidence of appellant's prior acts addressed appellant's knowledge. The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. It was first raised by appellant and only addressed by the State on redirect examination. Any possible prejudice that accrued to appellant through this testimony was not unfair, because he opened the door to that line of questioning.

{¶69} Accordingly, appellant's fourth assignment of error is without merit.

{¶70} Appellant's fifth assignment of error states:

{¶71} "[5.] THE TRIAL COURT ERRED BY NOT CREDITING THE DEFENDANT-APPELLANT 115 DAYS OF JAIL TIME CREDIT AS OF THE DAY OF SENTENCING."

{¶72} We review whether the trial court's determination as to the amount of jail time credit for a felony is clearly and convincingly contrary to law. *State v. Perkins*, 11th Dist. Lake No. 2018-L-084, 2019-Ohio-2288; R.C. 2953.08(G)(2)(b).

{¶73} Under this assignment of error, appellant argues that he was arrested and remained in jail on both 2022-CR-320 and 2022-CR-857. In 2022-CR-857, he was arrested on August 16, 2022, and in 2022-CR-320, his bond was revoked on August 19, 2022. He believes, despite the trial court imposing consecutive sentences, that he is entitled to 115 days jail time credit in 2022-CR-320. Appellant acknowledges that *State v. Cupp*, 156 Ohio St.3d 207, 2018-Ohio-5211, 124 N.E.3d 811 and *State v. Fugate*, 117

18

Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440 hold that a defendant sentenced to consecutive terms is only entitled to have jail time credit applied to one prison term, which "gives full credit that is due because the credit reduces the entire length of the prison sentences." *Fugate* at ¶ 22. However, he argues that his case is dissimilar from *Cupp* and *Fugate* because appellant "was not serving a sentence while incarcerated. He was awaiting trial on both of these unrelated cases" and therefore serving time on both cases.

{¶74} This argument is not persuasive because it results in equal protection violations for individuals who post bond on their cases and are subsequently sentenced to consecutive sentences. "The practice of awarding jail-time credit has its roots in the Equal Protection Clauses of the Ohio and United States Constitutions." *Perkins* at ¶ 13, citing *Fugate* at ¶ 7. "Since the Equal Protection Clause does not tolerate disparate treatment of defendants based solely on their economic status, the United States Supreme Court has repeatedly struck down rules and practices that discriminate against defendants based solely on their inability to pay fines and fees." *Id.*

{¶75} R.C. 2967.191(A) provides that the "department of rehabilitation and correction shall reduce the prison term of a prisoner * * * by the total number of days that the prisoner was confined for * * * arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial * * *."

{¶76} Where, as here, a defendant is ordered to serve a consecutive sentence, Ohio Adm. Code 5120-2-04(G) provides that jail-time credit is applied only once, to the total term for offenders serving consecutive terms. *Perkins* at ¶ 16, citing *Fugate* at ¶ 10.

{¶77} Appellant essentially argues for 230 days of jail time credit saying that he should receive jail time credit for both offenses despite being ordered to serve

19

consecutive sentences. This argument violates the principles of equal protection because it would benefit a defendant who did not make bond over a defendant who did. *See Perkins, supra,* at ¶ 13. The trial court sentenced appellant to a total of 22-months in prison and he received jail time credit for the total number of days he spent in jail prior to sentencing. Appellant seeks to double count 115 days of his jail time credit because he was awaiting trial on both cases and had not yet been sentenced on either case. If appellant's argument were accepted, his total incarceration would be 115 days shorter than a similarly situated defendant who posted bond and was ordered to serve two consecutive sentences. Appellant was sentenced to 22-months total incarceration and will serve 22-months total incarceration based on the trial court's calculation of his jail time credit.

{¶78} Appellant will serve the same number of days incarceration as a defendant who did post bond and received the same consecutive sentence. This outcome ensures equal protection under the law. *See State v. Whitaker*, 4th Dist. Ross No. 02CA2691, 2003-Ohio-3231, ¶ 7-8.

{¶79} Accordingly, appellant's fifth assignment of error is without merit.

{¶80} For the foregoing reasons, the judgments of the Lake County Court of Common Pleas are affirmed.


EUGENE A. LUCCI, J.,

ROBERT J. PATTON, J.,

concur.


20

Case Nos. 2023-L-006, 2023-L-007