[Cite as *State v. Courson*, 2023-Ohio-4264.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

STATE OF OHIO,

      Plaintiff-Appellee,

- vs -

CHRISTOPHER P. COURSON,

      Defendant-Appellant.

**CASE NO. 2023-A-0010**

Criminal Appeal from the
County Court, Eastern District

Trial Court No. 2022 CRB 00227 E

**O P I N I O N**

Decided: November 27, 2023
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Christopher R. Fortunato*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Eric D. Hall*, P.O. Box 232, Medina, OH 44258 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1}    Appellant, Christopher Courson, appeals his convictions of three counts of Cruelty to Animals, second-degree misdemeanors in violation of R.C. 959.13(A)(1). For the following reasons, we affirm the judgment of the Ashtabula County Court, Eastern District.

{¶2}    Appellant was indicted on three counts of Cruelty to Animals. On December 12, 2022, the Ashtabula County Court, Eastern District held a bench trial. The court found Appellant guilty on all counts.

{¶3}    The following facts were testified to at trial:

{¶4}  In February 2022, Appellant's girlfriend, Alyssa, had contacted a mutual friend, Casey Colby, "to bring medication for a horse that was down on the ground."  When Ms. Colby arrived, "there was a horse laying in the driveway.  Um, he wasn't getting up.  He wasn't really moving.  We tried to use a rope to flip him over to try to get him to get up. [Appellant] and Alyssa helped me and we couldn't get him to flip over, so we gave him the medicine and it didn't really help him at all."  Ms. Colby saw that there were three horses, who were all very "skinny" and "thin * * * you could see their ribs."  Ms. Colby did not see any "hay in the barn, and, * * * had asked them to bring some hay or bedding or something to help, like, prop him up to give him some footing, and [Appellant] said he didn't have any."  Ms. Colby then called her veterinarian, Dr. Steve Wales, to see the horses.

{¶5}  Dr. Wales described what he saw when he arrived:

It was pretty brutal; probably one of the worst scenes I've seen in my 22 years. The horse was down at the end of the driveway, um, covered in a blanket, but it was banging its head against the cement. Um, I took the blanket out to evaluate the situation; um, extremely emaciated, skinny, all kinds of lost weight. Um, I didn't really assess the situation much. The horse was in some serious pain. His gum color was pale. Um, he was pretty much close to death, um, and just to put him out of his -- his pain and misery, I euthanized him.

Dr. Wales stated that he found the horses in a condition that "just doesn't happen overnight. This is lack of care, probably, that's been going on."  On a body condition score "based on a scale of 1 to 9 -- 9 being fat and overweight, 1 being, you know, I guess all skin and bones," Dr. Wales scored the first horse he saw as 2.  He scored the other two horses as 3.  Dr. Wales said that there was barely any food on the property for the horses.  Appellant had shown Dr. Wales half a bin of grain and indicated that there was some

2

more inside the house or on the porch. Dr. Wales then finished his evaluation and contacted the humane society to report the horses' conditions.

{¶6} Sergeant Brian Sterrick had arrived at Appellant's property on February 16, 2022 to "follow up" on a complaint from Dr. Wales. Sgt. Sterrick met with Appellant, and asked if he could see the remaining horses. Sgt. Sterrick noted that "you could see the ribs on the horses" and "they had an emaciated appearance." Appellant had told Sgt. Sterrick that he believed the horses became sick from mold on the hay he had been feeding them. Sgt. Sterrick charged Appellant with three counts of Cruelty to Animals. While Sgt. Sterrick was at the property, the county "dog warden" contacted Kelly Williams to take possession of the remaining horses. Ms. Williams was a local resident who was known for "taking in horses or being a very reputable horse person." Ms. Williams described the horses as "very thin" like they had not been eating. After taking the horses to her farm, Ms. Williams provided them with "basic care, food, water," causing them to both gain weight.

{¶7} Appellant testified that he "had a monthly order [for feed] from Tractor Supply that would come in. We'd get five bags of Omolene; five bags of, ah, Pro Force Senior; and, ah, Hoof and Mane; Mare Magic; ah, treats; whatever else we needed." He also provided the court with receipts for the grain and hay that he had purchased. However, the most recent receipt Appellant had provided showed that he last bought feed on May 7, 2021 – approximately nine months prior to the instant incident.

{¶8} On January 30, 2023, the trial court sentenced Appellant to 90 days in jail on each count, a total of $300.00 in fines, and five years of community control.

3

Case No. 2023-A-0010

{¶9} Appellant timely appeals and raises two assignments of error which we will address together:

[1]: "The evidence was insufficient to support the trial court's verdicts of guilty as to Cruelty to Animals."

[2]: "Appellant's convictions as to Cruelty to Animals was against the manifest weight of the evidence."

{¶10} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the [factfinder] or whether the evidence is legally sufficient to support the [factfinder's] verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶11} When evaluating the weight of the evidence, we review whether the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other indicated clearly that the party having the burden of proof was entitled to a verdict in its favor, if, on weighing the evidence in their minds, the greater amount of credible evidence sustained the issue which is to be established before them. "Weight is not a question of mathematics but depends on its effect in inducing belief." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

4

Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates to the evidence's persuasiveness. *Id.*

{¶12} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with the prosecution or the defendant. *Id.,* quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus. The reviewing court "determines whether * * * the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶13} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶14} We begin by analyzing whether it was against the manifest weight of the evidence for the court to find Appellant guilty of violating R.C. 959.13(A)(1), Cruelty to Animals.

Case No. 2023-A-0010

{¶15} R.C. 959.13(A)(1) provides: "No person shall [t]orture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water."

{¶16} Does the greater weight of the credible evidence presented at trial support Appellant's convictions under R.C. 959.13(A)(1)? The testimony offered at trial supports the conclusion that the three horses were deprived of necessary sustenance and confined without a sufficient quantity of food. The testimony demonstrated that the horses were emaciated and so "thin" that one could see their rib cages. Dr. Wales euthanized one because, in his opinion, the horse was "pretty much close to death." None of the witnesses saw a sufficient amount of grain or hay to feed the horses. Dr. Wales testified that the horses' conditions did not occur over night, but rather had developed over time – the likely reason being a "lack of care." Appellant testified that he regularly fed the horses and provided receipts of his grain and hay purchases. Yet, he did not offer any evidence showing he purchased feed after May 2022. A reasonable trier of fact could conclude, based on the evidence presented at trial, that Appellant had deprived the horses of necessary sustenance or confined them without supplying them with a sufficient quantity of food. Upon review, this is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶17} Because Appellant's convictions were not against the manifest weight of the evidence, there was sufficient evidence to support his convictions.

{¶18} Appellant's assignments of error are without merit.

6

Case No. 2023-A-0010

{¶19} The judgment of the Ashtabula County Court, Eastern District, is affirmed.


MATT LYNCH, J.,

ROBERT J. PATTON, J.,

concur.

7