[Cite as *State v. Huffman*, 2024-Ohio-889.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF EASTLAKE,<br><br>　　　　　Plaintiff-Appellee,<br><br>- vs -<br><br>MICHAEL HUFFMAN, SR.,<br><br>　　　　　Defendant-Appellant. | CASE NO. 2023-L-057<br><br>Criminal Appeal from the<br>Willoughby Municipal Court<br><br>Trial Court No. 2022 CRB 01795 |

**O P I N I O N**

Decided: March 11, 2024
Judgment: Affirmed

*Jackie O'Donnell*, City of Eastlake Prosecuting Attorney, 35150 Lakeshore Blvd., Eastlake, OH 44095 (For Plaintiff-Appellee).

*Hector G. Martinez, Jr.,* and *Richard J. Perez,* 4230 State Route 306, Suite 240, Willoughby, OH 44094 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Michael Huffman, Sr., appeals his conviction of Sexual Imposition, a third-degree misdemeanor in violation of R.C. 2907.06(A)(1). For the following reasons, we affirm the judgment of the Willoughby Municipal Court.

{¶2} On appeal, Appellant raises five assignments of error: (1) The State failed to preserve and produce Appellant's recorded interview with the Eastlake Police Department; (2) the trial court erred in not imposing a sanction on the State for failing to produce evidence; (3) the trial court erred in denying Appellant's Crim.R. 29 motion for

acquittal; (4) Appellant's conviction was against the manifest weight of the evidence; (5) the trial court gave the jury an incorrect instruction on the definition of "purposely."

{¶3} After a review of the record and applicable case law, Appellant's assignments of error are without merit. Appellant's video recorded interview was only potentially useful, and the detective did not act in bad faith in failing to preserve it. The trial court did not err when it denied Appellant's request to impose sanctions for failing to preserve the recording because Appellant did not demonstrate that the failure to preserve was willful, that foreknowledge of the recording's loss would have benefited him in the preparation of a defense, and that he was prejudiced. Appellant's conviction was not against the manifest weight of the evidence because a reasonable jury could find that Appellant had sexual contact with the victim knowing that the sexual contact was offensive to her. Because Appellant's conviction was not against the manifest weight of the evidence, there was sufficient evidence to support his conviction. Finally, the trial court did not abuse its discretion in instructing the jury on the definition of "purposely" because "purpose" is not included in R.C. 2907.06(A)(1) and the court is not required to give jury instructions that are repetitive or may confuse the jury.

{¶4} On August 11, 2022, a complaint was filed against Appellant for committing Sexual Imposition. Appellant pled not guilty.

{¶5} On February 22, 2023, Appellant moved to dismiss, asserting that his due process rights had been violated because the State failed to preserve and produce his recorded interview with Detective Fawcett from the Eastlake Police Department.

{¶6} Before trial commenced, the court held an oral hearing on Appellant's motion. Detective Fawcett testified that she conducted an interview with Appellant on

2

July 21, 2022 in relation to the incident leading to his conviction. She testified that typically, the detectives are required to file a request to preserve recorded interviews. But, she did not request to preserve Appellant's interview. Detective Fawcett said that her failure to request to preserve the recorded interview "was an honest mistake. I had multiple interviews that day, which is no excuse. And I was dispatched to another call for service minutes later. Unfortunately, it was an inadvertent human error." Detective Fawcett testified that upon realizing that the video had not been preserved, the police department attempted to recover the recording, but was not successful. She stated that during his interview, Appellant denied the allegations against him. Detective Fawcett also wrote a report following the interview as to what Appellant told her.

{¶7} The court denied Appellant's motion to dismiss. It found that the recorded interview was not materially exculpatory, but rather was potentially useful to the defense. The court also found that the State did not act in bad faith in failing to preserve the recorded interview and found "the testimony of the detective credible in that as she was called away, failed to preserve the recording. So the motion to dismiss is denied."

{¶8} On February 27, 2023, a jury trial commenced. The victim, Hilary Quellos, testified that on July 19, 2022 at approximately 7:00 p.m., she visited the Offshore Bar and Grille to see her boyfriend, Theodore Shepard, who was tending bar. The victim occasionally worked at the bar, but also visited the bar approximately "once a week" for social reasons. When she entered the bar, she greeted Appellant and his friend, Kirk Heintz, by hugging them and kissing them on the cheek. She knew Appellant and Mr. Heintz as acquaintances because she had tended bar at a different bar in the area years prior to the incident. The victim interacted with Appellant throughout the night and walked

3

over to say goodbye to him before leaving. She testified that during this interaction, Appellant "grabbed me by my ear, and he like kind of pulled me in to his chest. * * * Then he touched my butt. Like the first time was just a touch." She described it as "uncomfortable" and "terrible" and she "told him to stop, knock it off." She claimed that Appellant then touched her buttocks again. The victim described the second touching as "painful" because he placed his hands lower and "he put his hand where it was actually his fingers were like on top of my [public region] pushing hard, it hurt." She reacted by pushing his hands away from her body. Mr. Heintz then commented that the victim's "[breasts] had gotten smaller, they were gone." Following this statement, Appellant "grabbed" her breasts and told her that she was "hot." The victim "awkwardly" "giggled" and walked away.

{¶9} The State offered, as an exhibit, the bar's video surveillance of the incident. The victim pointed to the moment in the video where Appellant was "touching my ear, grabbing me into his chest, grabbing my behind the first time, grabbing my behind the second time, where he puts it further in, and him touching my breast."

{¶10} Appellant left the bar shortly after the incident. The victim stayed at the bar to tell her friend Carolyn Karnak, who was tending bar, about what had happened because she was upset. Mr. Shepard had ended his shift before the incident occurred and was already home when the victim returned to her residence that evening. She told him that Appellant had "grabbed" her pubic region. She then called the police department to report the incident. Two peace officers arrived. Officer Otallah testified that the victim was "upset" and "crying" when they arrived. The victim told the officers that Appellant had

4

touched her buttocks, but did not mention him touching her breasts. A police investigation began.

{¶11} Detective Fawcett testified at trial. Before her testimony, defense counsel objected to Detective Fawcett testifying and moved the court to impose sanctions on the State for failing to preserve the recorded interview. The court denied the motion, explaining: "* * * the Court is not going to issue a sanction. I do agree that what's going to happen here is that there is going to be cross examination regarding the failure to preserve the evidence for the case. And so the sanction, if any, could be left to a jury determination here." Detective Fawcett reiterated, this time in front of the jury, that Appellant denied all allegations. Detective Fawcett also interviewed Mr. Heintz. She testified that Mr. Heintz' statement regarding the night in question did not match the surveillance footage.

{¶12} The State rested its case. Appellant moved for acquittal under Crim.R. 29. The court denied the motion.

{¶13} Gary Silc testified that he was at the Offshore Bar and Grille on July 21, 2022 sitting next to Appellant and Mr. Heintz when the incident allegedly occurred. Mr. Silc testified that he did not witness Appellant touching the victim, nor did he hear her tell Appellant to "stop." Mr. Heintz testified that he did not see Appellant touch the victim.

{¶14} Appellant elected to testify at trial. He denied touching the victim's breasts or pubic region. He admitted to giving her "three pats on the back, whatever you want to call it." He testified that he did not touch the victim's buttocks for either person's sexual gratification.

5

{¶15} The defense rested its case and renewed its Crim.R. 29 motion for acquittal. The court again denied the motion. The court next considered which jury instructions to submit to the jury. Defense counsel offered a definition of "purposely," explaining: "What we're asking the Court to include is the lines, to do an act purposely, is to do it intentionally and not accidentally. The purpose and intent mean the same thing. Those two lines are just clarifying for the jury." Defense counsel also asked the court to include "the purpose with which a person does an act, is known only to that person, unless he or she expresses it to others or indicates it by his or her conduct." After a discussion on the language, the court decided:

> So I'm going to give them instruction, the original instruction from OJI, on the definition of purposely, that we have discussed and there has been no objection to, that a person acts purposely when it is the person's specific intention to cause a result or engage in conduct of a certain nature. It must be established in this case that at the time in question, there was a presence in the mind of the defendant to be specific intentional to sexual arouse or gratify either person. I am going to exclude completely the intent language, the quote "additional" language under OJI, so there will be nothing included. I will include paragraph five, under the purpose with which a person does an act or brings about a result is determined from the manner in which it was done, the means used, and all the other facts and circumstances in evidence.

{¶16} The court further clarified that "because the mens rea of the offense is sexual imposition knowingly [sic]. * * * or recklessly * * * Which we have given them both of those instructions. My concern in giving this additional instruction is that it is not -- it becomes unclear at that point to the jury. So that's going to be my ruling * * *."

{¶17} The jury returned its verdict and found Appellant guilty of committing Sexual Imposition. On April 11, 2023, the court held a sentencing hearing. It imposed a $500.00 fine, sentenced Appellant to 60 days in jail with 50 days suspended, placed Appellant on

6

18 months of community control, and notified him that he must register as a tier I sex offender.

{¶18} Appellant timely appealed and raises five assignments of error. For clarity and ease of discussion, we may address multiple assignments together.

{¶19} First assignment of error: "Appellant's due process rights under the Fifth, Sixth, and Fourteenth Amendments were violated when the State failed to preserve and produce his video recorded interview with the Eastlake Police Department and the trial court erred in denying Appellant's motion to dismiss."

{¶20} We review a trial court's decision on a motion to dismiss under a de novo standard of review. *State v. Palivoda*, 11th Dist. No.2006-A-0019, 2006-Ohio-6494, at ¶ 4. "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence." *State v. Hines*, 11th Dist. No.2004-L-066, 2005-Ohio-4208, at ¶ 14, citing *State v. Serls*, 118 Ohio App.3d 739, 741, 693 N.E.2d 1184 (5th Dist. 1997). "Accepting the trial court's determination of the factual issues, the court of appeals must conduct a de novo review of the trial court's application of the law to those facts." *Id.*

{¶21} Under this assignment of error, Appellant first asserts that the trial court erred in finding that his recorded interview was potentially useful and not materially exculpatory.

{¶22} The State's failure to preserve materially exculpatory evidence is a violation of a defendant's due process rights under the Fourteenth Amendment of the United States Constitution. *See Arizona v. Youngblood*, 488 U.S. 51, 55-58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) * * *. The burden rests with the defendant to prove that the evidence in

7

question was materially exculpatory. *State v. Jackson*, 57 Ohio St.3d 29, 33, 565 N.E.2d 549 (1991). Evidence is deemed materially exculpatory only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus * * *. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

{¶23} However, "evidence is not materially exculpatory if it is merely potentially useful to the defense." *State v. Lewis*, 70 Ohio App.3d 624, 634, 591 N.E.2d 854 (4th Dist.1990). "* * * The failure to preserve evidence that is merely potentially useful violates a defendant's due process rights only if the police or prosecution acted in bad faith." *State v. Keith*, 79 Ohio St.3d 514, 523, 684 N.E.2d 47 (1997). "The term 'bad faith' generally implies something more than bad judgment or negligence. 'It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.'" *State v. Wolf*, 154 Ohio App.3d 293, 797 N.E.2d 109, 2003-Ohio-4885, ¶ 14 (7th Dist.), quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276, 452 N.E.2d 1315 (1983).

{¶24} The recorded interview between Appellant and Detective Fawcett was only potentially useful to the defense and not materially exculpatory. If the evidence had been preserved and disclosed to the defense, the proceedings' outcome would not have been different. Both Appellant and Detective Fawcett testified to what Appellant had said during the interview: that he denied the accusations against him. The jury heard testimony that Appellant has maintained (since the police first questioned him) that he did not touch the victim on her breasts or pubic region. The jury's hearing the interview first-

8

hand would not have provided any new information to assist in Appellant's defense. Upon a de novo review, we find that there was ample competent and credible evidence to support the court's finding that the recorded interview was only potentially useful to the defense and not materially exculpatory.

{¶25} Appellant also argues that even if the evidence was potentially useful and not materially exculpatory, the trial court erred because the police department acted in bad faith by failing to preserve the recorded interview. As noted above, bad faith "generally implies something more than bad judgment or negligence." *Id.* Detective Fawcett testified that her failing to request to preserve the evidence was "an honest mistake" and "human error" because she had been dispatched on another case shortly after her interview with Appellant ended. While Detective Fawcett's actions may have been negligent, there was no evidence of a dishonest purpose, moral obliquity, conscious wrongdoing, or ulterior motive.

{¶26} Appellant asserts that the State and police department acted in bad faith because he requested the video recording on August 26, 2022, a time at which the police department still retained a copy of the recording. Yet, Detective Fawcett testified that she thought at the time that she had requested to preserve the recording and did not realize until three months before trial that she had not. Importantly, upon realizing that Detective Fawcett did not request to preserve the recording, the police department attempted (unsuccessfully) to recover it. We cannot find that Detective Fawcett, or the police department, acted in bad faith for failing to preserve the recorded interview.

{¶27} Appellant also argues that he was "forced" to testify at trial to clarify Detective Fawcett's testimony and what the video would have shown if it had been

9

preserved. Appellant's argument is unpersuasive. Detective Fawcett testified the same as Appellant: that he denied the allegations against him. Further, "[w]hether or not a defendant testifies is a tactical decision." *State v. McKay*, 11th Dist. Ashtabula No. 2001-A-0008, 2002-Ohio-3960, at ¶ 43. "[T]he ultimate decision of whether a defendant will testify on his own behalf is the defendant's." *Id.* at ¶ 44. There was no inclination (in this record) that Appellant was "forced" in any way to testify, but rather that he elected his right to testify and deny the allegations.

{¶28} Appellant's first assignment of error is without merit.

{¶29} Second assignment of error: "The trial court erred by failing to impose a sanction for the State of Ohio's violation of Rule 16 of the Ohio Rules of Criminal Procedure."

{¶30} We review a denial of a motion for sanctions for the spoliation of evidence under an abuse of discretion standard. *See Cincinnati Ins. Co. v. General Motors Corp.*, 6th Dist. Ottawa No. 94OT017, 1994 WL 590566 (Oct. 28, 1994).

{¶31} Abuse of discretion is a term of art. It connotes a court's exercise of judgment that neither comports with reason nor the record. *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 [148 N.E. 362] (1925). Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 9, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * *

10

Case No. 2023-L-057

By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶ 67. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

{¶32} Crim.R. 16 controls the discovery process, the purpose of which is "to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large." See Crim.R. 16(A). The trial court has discretion to determine an appropriate sanction for a discovery violation. See Crim.R. 16(L); *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33. If a party fails to comply with Crim.R. 16 or with an order issued pursuant to the rule, the court may "order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." Crim.R. 16(L).

{¶33} In exercising its discretion in imposing a sanction for a discovery violation, the court must consider (1) whether the failure to disclose was a willful violation of Crim.R. 16; (2) whether foreknowledge of the undisclosed material would have benefited the defendant in the preparation of a defense; and (3) whether the defendant was prejudiced. *Darmond* at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983), syllabus; *State v. Williams*, 1st Dist. Hamilton Nos. C-160196 and C-160197, 2016-Ohio-

11

Case No. 2023-L-057

8123, ¶ 11. When imposing a discovery sanction, the court must impose the least severe sanction that is consistent with the purpose of the rules of discovery. *Id.* at syllabus, citing *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987).

{¶34} In this case, the trial court did not abuse its discretion in denying Appellant's motion to impose sanctions on the State for failing to preserve the recorded interview. The trial court considered whether the failure to preserve was willful and found Detective Fawcett's testimony that she made "an honest mistake" credible. The court did not specifically state whether foreknowledge of the undisclosed material would have benefited the defendant in the preparation of a defense. The court's failure to make a determination is harmless error. The video would not have benefitted Appellant's defense because it only revealed that he has maintained that the allegations against him were untrue. The trial court considered whether Appellant was prejudiced, but determined that he was not because he could refute Detective Fawcett's testimony on cross-examination. The trial court's considerations were not unreasonable or arbitrary, and it did not abuse its discretion in denying Appellant's motion to impose sanctions.

{¶35} Appellant's second assignment of error is without merit.

{¶36} Third assignment of error: "The trial court erred in denying Appellant's motion for a judgment of acquittal pursuant to Crim.R. 29(A)."

{¶37} Fourth assignment of error: "The trial court erred when it returned a verdict of guilty against the manifest weight of the evidence."

{¶38} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient

Case No. 2023-L-057

to sustain a conviction of such offense or offenses." Crim.R. 29. Under Crim.R. 29(A), "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 261 (1978), at syllabus. "Thus, when an appellant makes a Crim.R. 29(A) motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166, 2003-T-0167, 2004-Ohio-6688, ¶ 18.

{¶39} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the [factfinder] or whether the evidence is legally sufficient to support the [factfinder's] verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶40} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the State's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

Case No. 2023-L-057

**{¶41}** Evaluating the weight of the evidence is different. There, we independently review all the credible evidence offered at trial, consider whether its greater weight supports one side of an issue rather than the other and whether, upon weighing it all, it clearly indicates that the party having the burden of proof was entitled to a verdict in its favor.

**{¶42}** Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates to the evidence's persuasiveness. *Id.* The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

**{¶43}** The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with the prosecution or the defendant. *Id.,* quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at

14

390 and *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus.

{¶44} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶45} We begin by analyzing whether it was against the manifest weight of the evidence for the jury to find Appellant guilty of committing Sexual Imposition in violation of R.C. 2907.06(A).

{¶46} R.C. 2907.06(A)(1) provides, in relevant part, that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard."

{¶47} "Sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶48} The Ohio Revised Code does not define sexual arousal or gratification. "Whether a touching is for the purpose of sexual gratification or arousal is a question of fact to be inferred from the type, nature, and circumstances surrounding the contact." *State v. Mack*, 1st Dist. Hamilton No. C-050968, 2006-Ohio-6284, ¶ 9. This court has previously held that "[a] touching alone is not sufficient for a conviction, but it can be strong evidence of intent." *State v. Griffiths*, 11th Dist. Trumbull No. 2000-T-0131, 2002 WL 5307, *3 (Dec. 28, 2001), citing *In re Anderson*, 116 Ohio App.3d 441, 444 (12th

15

Dist.1996). "There is no requirement that there be direct testimony regarding sexual arousal or gratification." *State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-062, ¶ 13.

{¶49} Appellant's conviction for Sexual Imposition was not against the manifest weight of the evidence. The Offshore Bar and Grille's surveillance video showed Appellant touching the victim on her buttocks and breasts. The victim testified that Appellant touched her on her buttocks, breasts, and pubic region. Appellant even testified that he touched the victim's buttocks. While the defense presented testimony from witnesses that they did not see Appellant touch the victim or heard her ask him to stop, the jury was free to believe or disbelieve any testimony.

{¶50} The jury could also infer that Appellant knew the contact was offensive to the victim. The victim testified that she tried pushing Appellant's hands away from her and told him to stop. Carolyn Karnak testified that the victim was upset and crying after Appellant had touched her.

{¶51} Lastly, it was not against the manifest weight of the evidence for the jury to conclude that Appellant's touching the victim was for the purpose of sexual gratification or arousal. The nature and circumstances surrounding the incident are informative. The jury heard more evidence than only that Appellant had touched the victim on her breasts, pubic region, and buttocks. The victim testified that Appellant commented on her appearance and indicated that he found her attractive. Appellant and Kirk Heintz both discussed the victim's breasts. Appellant also pulled the victim's head close to his chest. Considering the nature and circumstances, a reasonable jury could find that Appellant had sexual contact with the victim for the purpose of sexual gratification or arousal.

16

Case No. 2023-L-057

**{¶52}** Upon review, this is not the exceptional case in which the evidence weighs heavily against the conviction. Because Appellant's conviction was not against the manifest weight of the evidence, there was sufficient evidence to support his conviction.

**{¶53}** Appellant's third and fourth assignments of error are without merit.

**{¶54}** Fifth assignment of error: "The trial court erred in instructing the jury on the definition of purposely."

**{¶55}** "An appellate court reviews a trial court's decision to give a particular set of jury instructions under an abuse of discretion standard. *State v. Martens*, 90 Ohio App.3d 338, 343, 629 N.E.2d 462 (3d Dist.1993). If, however, the jury instructions incorrectly state the law, then an appellate court will conduct a de novo review to determine whether the incorrect jury instruction probably misled the jury in a matter materially affecting the complaining party's substantial rights. *State v. Kovacic*, 11th Dist. No. 2010-L-018, 2010-Ohio-5663, 2010 WL 4722443, ¶ 17.

**{¶56}** "Jury instructions are critically important to assist juries in determining the interplay between the facts of the case before it and the applicable law." *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, 24 N.E.3d 1147, ¶ 5. "A trial court's instructions to a jury must correctly, clearly, and completely state the law applicable to the case." *State v. Orians*, 179 Ohio App.3d 701, 2008-Ohio-6185, 903 N.E.2d 656, ¶ 10 (3d Dist.). In examining a challenge to a jury instruction, "[t]he relevant principle * * * is not one of abstract correctness, but is whether an instruction - even if a correct statement of law - is potentially misleading." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 52. Thus, an appellate court "must determine whether the jury charge probably

misled the jury in a matter materially affecting the complaining party's substantial rights."

*Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990).

{¶57} Appellant does not assert that the jury instruction of "purposely" incorrectly stated the law, but rather that the court erred in omitting language he requested.

{¶58} Upon a de novo review, the court's jury instruction did not incorrectly state the law. The court instructed the jury that:

> A person acts purposely when it's the person's specific intention to cause a certain result or engage in conduct of a certain nature. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to sexually arouse or gratify either person. The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means used and all the other facts and circumstances in evidence.

{¶59} R.C. 2901.22(A) provides: "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."

{¶60} The first line of the jury instruction here is an almost verbatim recitation of the statutory definition. The court did not incorrectly state the law when it instructed the jury on "purposely."

{¶61} We now review the court's jury instruction to determine whether it abused its discretion when it did not adopt Appellant's proposed definition of "purposely."

{¶62} Appellant's proposed jury instruction (with emphasis added to distinguish the difference between the instruction given to the jury) provided:

> A person acts purposely when it's the person's specific intention to cause a certain result. It must be established in

18

this case that at the time in question there was present in the mind of the defendant a specific intention to sexually arouse or gratify either himself or the other person. *Purpose is a decision of the mind to do an act with a conscious intent to produce a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to that person unless he/she expresses it to others or indicates it by his/her conduct.* The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means used and all the other facts and circumstances in evidence.

{¶63} Appellant first contends that the court should have included in its jury instruction that "purpose" is an essential element of Sexual Imposition. First, Appellant's proposed instruction did not include that. The trial court did not abuse its discretion in failing to include that statement because (1) the jury instruction given was a correct statement of the law; and (2) the court cannot be expected to add a sentence that Appellant never requested. Second, "purposefulness" is only indirectly related to the charged offense through the use of its term "sexual contact," which includes the element of "purpose." In short, the court instructed the jury that it must find Appellant had sexual contact with the victim; the jury was not misled.

{¶64} Appellant next argues that his proposed jury instruction on "purpose" was "the exact jury instruction from the Ohio Jury Instructions and should have been included by the trial court in the charge to the jury."

{¶65} Notably, Ohio Jury instructions ("OJI") are not a source of binding legal authority but "are helpful as an example of the generally accepted interpretation" of state law. *State v. Ferguson*, 10th Dist. Franklin No. 07AP-640, 2008-Ohio-3827, ¶ 47, quoting *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 97 (Lanzinger, J., dissenting). "Strict compliance with OJI is not mandatory; deviation from OJI does not

19

Case No. 2023-L-057

necessarily constitute error by a trial court." *State v. Smith*, 12th Dist. Butler No. CA2009-02-038, 2010-Ohio-1721, ¶ 14.

**{¶66}** It did not constitute an abuse of discretion in this case because the instruction was an accurate statement of the law.

**{¶67}** Appellant also asserts that the trial court erred in omitting additional language on "intent." Specifically: "Purpose is a decision of the mind to do an act with a conscious intent to produce a specific result. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to that person unless he/she expresses it to others or indicates it by his/her conduct."

**{¶68}** Appellant contends that the trial court's omitting the above language misled the jury and "diluted" the State's burden in proving the mens rea of "purpose." The trial court instructed the jury that "[i]t must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to sexually arouse or gratify either person." It instructed the jury on the statutory definition of "sexual contact" (as an element of the offense) which included the requirement of "purpose." Importantly, the jury was instructed that sexual contact was an essential element the State had to prove to convict Appellant, and what that meant. That it was not in the precise terms Appellant would have used does not demonstrate an abuse of discretion. Under Ohio law, "[t]he trial court is not required to include proposed jury instructions which are repetitive and would simply confuse the jury." *State v. Ossege*, 2014-Ohio-3186, 17 N.E.3d 30, ¶ 40 (12th Dist.).

20

Case No. 2023-L-057

{¶69} Appellant's proposed instruction was repetitive in its relation of "intent" to "purpose." In other words, the jury was not misled because it knew (and was instructed) that it must have found that Appellant acted with a "specific intention." Appellant's proposed instruction also could have confused the jury on the required mens rea. The court instructed the jury on "knowingly" and "recklessly" because they are included within R.C. 2907.06(A)(1). "Purpose" is only contained secondarily within the definition of "sexual contact." Neither R.C. 2907.06(A)(1) nor the definition of "sexual contact" mentions "intent."

{¶70} Moreover, jury instructions are to be "appropriate to the facts of the case." *State v. Turner*, 3d Dist. Marion No. 9-04-21, 2004-Ohio-6489, ¶ 35. "An appellate court reviewing jury instructions must examine the specific charge at issue in the context of the entire charge, and not in isolation." *Orians,* 179 Ohio App.3d 701, 2008-Ohio-6185, 903 N.E.2d 656, at ¶ 10. The specific charge here, Sexual Imposition, requires the purpose of the sexual contact to be for sexual gratification or arousal. As noted above, "it is sufficient to present circumstantial evidence from which the finder of fact can infer the purpose of the act was for sexual gratification * * *." *State v. Breland*, Ashtabula App. No.2003-A-0066, 2004-Ohio-7238, ¶ 24. Instructing the jury that "[t]he purpose with which a person does an act is known only to that person unless he/she expresses it to others or indicates it by his/her conduct" could have confused the jury by suggesting that it could not consider circumstantial evidence.

{¶71} For the foregoing reasons, the trial court did not abuse its discretion in not charging the jury with Appellant's proposed jury instruction of "purposely."

{¶72} Appellant's fifth assignment of error is without merit.

21

{¶73} We affirm the judgment of the Willoughby Municipal Court.


EUGENE A. LUCCI, P.J.,

MATT LYNCH, J.,

concur.

Case No. 2023-L-057