[Cite as *State v. Daniel*, 2024-Ohio-5551.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-T-0025 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| JOHN L. DANIEL, JR., | |
| Defendant-Appellant. | Trial Court No. 2023 CR 00455 |

# O P I N I O N

Decided: November 25, 2024
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Eric J. Cherry*, N.P. Weiss Law, 3091 Mayfield Road, Suite 320, Cleveland Heights, OH 44118 (For Defendant-Appellant).


JOHN J. EKLUND, J.

{¶1} Pursuant to a jury's verdict, the trial court found John L. Daniel, Jr. ("Appellant") guilty of: (1) Felonious Assault, a second-degree felony in violation of R.C. 2903.11(A)(1) with a firearm specification in violation of R.C. 2941.145; and (2) Domestic Violence, a third-degree felony in violation of R.C. 2919.25(A). Appellant timely appealed. For the following reasons, we affirm the judgment of the Trumbull County Court of Common Pleas.

{¶2} During the early morning hours on June 25, 2023, Appellant had an argument with his girlfriend, Stacey, in which he "grabbed" her face. Stacey's brother, Scott, heard her screaming for help and threw Appellant off of her. Appellant then took his firearm, chased Scott outside, and shot him five times. A jury found Appellant guilty of Felonious Assault with a firearm specification and Domestic Violence.

{¶3} Appellant appeals his conviction.

{¶4} On appeal, Appellant raises two assignments of error: (1) the trial court erred in denying Appellant's motion for a mistrial and allowed prosecutorial misconduct; and (2) Appellant's convictions were against the manifest weight of the evidence.

{¶5} After a review of the record and applicable caselaw, Appellant's assignments of error are without merit. The prosecutor's statements did not rise to the level where a fair trial was no longer possible, nor did the statements alter the trial's outcome. Appellant's convictions were not against the manifest weight of the evidence, as there was sufficient evidence for a jury to find him guilty of both counts. The State disproved Appellant's theory of self-defense because Appellant did not prove he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force.

## Factual and Procedural History

{¶6} The Trumbull County Grand Jury indicted Appellant on three counts: (1) Felonious Assault; (2) Having Weapons While Under Disability; and (3) Domestic Violence.

{¶7} At arraignment, Appellant pled not guilty.

{¶8} A jury trial commenced on February 5, 2024.

{¶9} The State first called Scott Simms. He testified that on June 25, 2023, he was living with his sister, Stacey Simms, and her fiancé, Appellant, in an apartment at 4510 Berkshire Street, Warren, Ohio. Stacey's daughter also lived there.

{¶10} Scott said that on June 25, 2023, at approximately 2:00 a.m., he was sitting in the living room and heard Stacey screaming, "[s]o I ran back there . . . [Appellant] was on top of Stacey and she was yelling, 'Get off of me. Get off of me.' So I ran back there, like any brother would, and just threw him off of her. I didn't touch him, hit him, nothing like that. I just threw him off and said, '[y]ou don't want to do this, man. Come on. You don't want to do this.'" Scott said he then went to his niece's room to check on her. "It was five to eight, maybe ten minutes later I heard my sister say, '[y]ou're really going to shoot my brother? You're really going to shoot him?' And that's when I took off out the sliding door to try to get away."

{¶11} Scott testified that after he ran out of the apartment through the back sliding doors, he ran toward the front yard. Appellant pursued Scott and shot him five times: "once in the arm, once in the back, twice in the buttocks and once on the left hip." Scott was hospitalized for 28 days. Scott testified that during the incident, he was not armed. Scott also said that he did not "punch" or "kick" Appellant during the altercation but only "grabbed him, got him off my sister. That was it."

{¶12} Stacey Simms testified next. Stacey said that on June 25, 2023, she and Appellant had been "arguing about me taking my daughter over to her father's house and I -- I cut my daughter's father's hair. And we argued -- we were arguing about that." She said Appellant was upset, accused her of having a sexual relationship with her daughter's father, and went to the "carport area" of the building to drink. Stacey said two to three

3

hours later, she "texted [Appellant] to ask him where the remote was. That's when he came in. And he came in. I was lying on the bed, and he said something to me about my daughter's father, about sleeping with him. And I said something back to him about it." As the argument continued, Appellant was on top of Stacey, and "grabbed" her face, leaving a mark. She said that Scott came in and "[t]hrew him off of me."

{¶13} Stacey testified that Appellant then retrieved a gun from the dresser drawer in their bedroom and chased Scott out of the apartment. Stacey said that as Appellant was chasing Scott outside, she was begging him, "[d]on't do it." On cross-examination, defense counsel asked Stacey if Scott had turned around and came "back toward" Appellant. She said that she saw Scott turn around but did not recall seeing him approach Appellant. While this was occurring, Stacey called the police. Stacey said she heard three gunshots. She next saw Appellant with towels, "putting them on Scott's wounds."

{¶14} The prosecution introduced, and played for the jury, a police officer's body camera video in which Stacey told the officer that Appellant had punched her in the face. When asked about this on re-direct examination, Stacey said she did not recall making the statement.

{¶15} Detective Nicole Smith from the Warren City Police Department testified. She said she, among others, investigated the incident. Detective Smith testified she ran a "computerized criminal history" on Appellant to determine if he had had any prior convictions. She testified and presented journal entries showing that Appellant had twice previously been convicted of Domestic Violence.

{¶16} Sergeant Trevor Sumption from the Warren City Police Department testified. He arrived at the scene at 2:45 a.m. on June 25, 2023. Sergeant Sumption said

4

he saw Scott and Appellant in the front yard as Appellant was applying pressure with towels to Scott's wounds. Sergeant Sumption said Appellant admitted to shooting Scott and told him he had put the firearm in a "red wagon." Sergeant Sumption located the firearm and two shell casings. He also went into the bedroom and found the firearm's holster. Sergeant Sumption testified that he had interviewed Stacey at the scene, and she told him Appellant had jumped on her and punched her in the mouth.

{¶17} Jonathan Gardner, a forensic scientist for the Ohio Bureau of Criminal Investigation, testified as an expert in firearms identification. He determined that the cartridge casings found at the scene came from the firearm Appellant had used to shoot Scott.

{¶18} Lindsey Nelsen-Rausch, a forensic scientist for the Ohio Bureau of Criminal Investigation, testified as a DNA expert. She analyzed the DNA on the firearm and testified there were "two people who had contributed more DNA to that profile. That major was consistent with [Appellant] and an unknown individual."

{¶19} The State rested its case. The defense moved for judgment of acquittal on all counts pursuant to Crim.R. 29. The court denied the motion.

{¶20} Appellant testified. He said that in 2021, he "had a spinal surgery. I got rods and screws from the brain stem down to the middle of my spine." He elaborated: "I'm still going through therapy as of today. I still don't have the use of my left hand, or I can barely raise my right hand. . . . The reason why I bought the firearm is to protect the three women that were there. I can't fight like I used to . . ."

{¶21} Appellant stated that on June 25, 2023, he and Stacey "were text arguing because we don't argue in front of the child" while he was "sitting in the car listening to

5

music and drinking my beer." Appellant said he returned to the apartment when Stacey texted him that she could not find the remote. Appellant got into the bed to look for the remote when he asked Stacey if "you know, was she still f****** [her daughter's father]." Appellant said Stacey replied with a "very hurtful response." Appellant then "turned around, reached for my -- telling her to shut up. . . . I just wanted to stop the conversation. It was over with. She was going to bed, and I was trying to get in the bed also." He further testified that he was "[t]elling [Stacey] to shut up. And then once I turned around, [I] grabbed her by her mouth and told her to shut up."

{¶22} Appellant testified that Scott entered the room after hearing Stacey scream for help and threw Appellant into the closet. Scott picked Appellant up for a second time and threw him again. Appellant testified he then grabbed his gun and "was planning to scare him out of my house." Appellant explained: "I start walking towards the living room. Stacey yells for Scott to run. He started running. I started chasing after him. We get by the corner of the house, or the apartment, whatever, Scott turns around. . . . Scott was coming back at me. That's when I fired the first shot. . . . Because if he would have got his hands on me, he could have really hurt me." Appellant stated he fired a second shot because Scott "kept advancing towards" him. Appellant said after firing a second shot, "I turn around, put my gun in the wagon by the car, I run in the house and I turn around and grab towels."

{¶23} The State asked Appellant why "instead of stepping back in that sliding door and locking it, you decide to shoot at him?" Appellant replied: "Why should I when I can stand my own ground?"

6

{¶24}  The defense rested its case and renewed its Crim.R. 29 motion.  The court again denied the motion.  The defense asked for a self-defense jury instruction, and the court agreed.

{¶25}  The parties delivered closing arguments.  After closing arguments, defense counsel moved for a mistrial.  Defense counsel argued the State prejudiced the jury when it stated during closing arguments: "But if you want to give him the gun back and let him go back with Stacey and assault some more women, go ahead and find him not guilty. . . . If you think he's acting in self defense under these facts, under these circumstances, then so be it, give him his gun back."  Defense counsel asserted that the statement was misleading because even if found innocent, Appellant would not be allowed to own a firearm.  The court denied the motion, explaining: "Well, it's closing argument, counsel, and no different than your closing argument. You stretched a lot of issues yourself. That's what it is, it's argument. The facts are the facts. The jury is smart enough to see through what [sic]."

{¶26}  In relevant part, the court gave the following jury instructions:

To prove that the defendant's use of deadly force was not in self defense, the state must prove beyond a reasonable doubt at least one of the following things: A, the defendant was at fault in creating the situation or giving rise to it; or B, the defendant did not have reasonable grounds to believe that he was in imminent or immediate danger of death or great bodily harm -- harm; or C, the defendant did not have an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm; or D, the defendant violated a duty to retreat to avoid the danger; or E, the defendant used unreasonable force.

At Fault. The defendant did not act in self defense if the state proved beyond a reasonable doubt that the defendant was at fault in creating the situation, incident or argument that resulted in the injury.  The defendant was at fault if the defendant was the initial aggressor and Scott Simms did not escalate the situation, incident or argument by being the first to use or attempt to use deadly force; or the defendant provoked Scott Simms into using force; or C,

7

the defendant did not withdraw from the situation, incident or argument; or D, the defendant withdrew from the situation, incident or argument, but did not inform Scott Simms or reasonably indicate by words or acts -- acts to Scott Simms of his withdrawal.

{¶27} The jury deliberated and found Appellant guilty of Felonious Assault, the firearm specification, and Domestic Violence. The jury found Appellant not guilty of Having Weapons While Under Disability.

{¶28} The court sentenced Appellant to imprisonment for a minimum of 9 years and 9 months and a maximum of 12 years and 9 months.

{¶29} Appellant timely appealed and raises two assignments of error. For clarity, we address his assignments out of order.

## Assignments of Error and Analysis

{¶30} **Second assignment of error: "The Jury Clearly Lost Its Way in Finding The State Disproved Self Defense and Proved Domestic Violence Beyond a Reasonable Doubt."**

{¶31} Under his second assignment of error, Appellant contends that his convictions were against the manifest weight of the evidence and that the jury should have found that he acted in self-defense.

{¶32} In evaluating the weight of the evidence, we independently review all the credible evidence offered at trial, consider whether its greater weight supports one side of an issue rather than the other and whether, upon weighing it all, it clearly indicates that the party having the burden of proof was entitled to a verdict in its favor. *State v. Huffman*, 2024-Ohio-889, ¶ 41 (11th Dist.).

{¶33} Weight of the evidence relates to the evidence's persuasiveness. *Id.* The reviewing court "weighs the evidence and all reasonable inferences, considers the

8

credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶34}** The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 2021-Ohio-4258, ¶ 22 (11th Dist.). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which he or she testifies, the witness' interest, if any, in the outcome of the case, and the witness' connection with the prosecution or the defendant. *Id.* This Court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 2003-Ohio-7183, ¶ 52 (11th Dist.).

**{¶35}** We first analyze whether Appellant's conviction for Felonious Assault was against the manifest weight of the evidence.

**{¶36}** R.C. 2903.11(A)(1) provides: "No person shall knowingly . . . cause serious physical harm to another . . . ."

**{¶37}** Appellant admitted that he shot Scott. Appellant asserts the jury should have found he acted in self-defense.

**{¶38}** "[A] defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense," i.e., "if the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim

9

when viewed in the light most favorable to the defendant, then the defendant has satisfied the burden." *State v. Messenger*, 2022-Ohio-4562, ¶ 25.  Where, as here, the defendant satisfies this burden of production, the prosecution must satisfy the "burden of disproving the defendant's self-defense claim beyond a reasonable doubt," *id.* at ¶ 27, i.e., the burden "of persuading the jury beyond a reasonable doubt that [the defendant] was not acting in self-defense when he [used force against another]." *Id.* at ¶ 26.

{¶39}  The elements of a self-defense claim include the following: "'(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.'" *Id.* at ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002).  The State need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden.  *State v. Knowlton*, 2023-Ohio-3759, ¶ 18 (11th Dist.).

{¶40}  The Ohio Supreme Court has described "the second element of self-defense [as] a combined subjective and objective test."  *State v. Thomas*, 77 Ohio St.3d 323, 330 (1997).  "[T]he jury first must consider the defendant's situation objectively, that is, whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack, [he] reasonably believed [he] was in imminent danger."  (Emphasis deleted.)  *Id.*  "Then, if the objective standard is met, the jury must determine if, subjectively, this particular defendant had an honest belief that [he] was in imminent danger."  *Id.* at 331.  "Although the term 'great bodily harm' is not statutorily defined, Ohio courts of appeal have concluded that

10

the term is substantially similar to 'serious physical harm,' which is statutorily defined." *State v. Chavez*, 2020-Ohio-426, ¶ 69 (3d Dist.).

{¶41} Here, the State disproved, at least, the second element of Appellant's self-defense claim. Appellant chased Scott out of the apartment while holding a firearm and followed him to the front yard near the sidewalk where Appellant had fallen after being shot. Scott did not have a weapon. At trial, Appellant argued that he was in danger of great bodily harm because of his prior spinal surgeries. Yet, the circumstances demonstrate that Appellant was not in imminent danger nor was his only means of escape from any alleged danger through the use of such force. The only testimony supporting Appellant's version of events that Scott stopped while being chased and started to approach Appellant was Appellant's own self-serving testimony. Neither Stacey nor Scott testified that Scott approached Appellant outside. Appellant could have stopped chasing Scott with the firearm, but instead, continued the affray and shot Appellant five times.

{¶42} In his brief, Appellant argues: "[T]he incongruous evidence is so out of place as to cast doubt on all the testimony given by Scott, Stacey and even the Appellant. We are told by everyone present that evening that everything happened on the west side of the building, but no one accounts for the blood on the east side of the building." While there was evidence showing blood on the other side of the building from where the testimony depicts the events occurred, there is no evidence supporting the theory that Scott intended to cause serious bodily harm to Appellant.

{¶43} Appellant's second assignment of error as it pertains to his conviction for Felonious Assault is without merit.

11

Case No. 2024-T-0025

{¶44} We next consider whether Appellant's conviction for Domestic Violence was against the manifest weight of the evidence.

{¶45} R.C. 2919.25(A) provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶46} The term "physical harm" is defined in R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." "Even a minor injury . . . constitutes physical harm for purposes of the domestic violence statute . . . ." *State v. Marrero*, 2011-Ohio-1390, ¶ 72 (10th Dist.); *see State v. Hamrick*, 2017-Ohio-323, ¶ 15 (4th Dist.) (affirming the appellant's conviction for Domestic Violence when the evidence showed the victim had "redness" on her ear, bruises on her leg, and scratches on her neck.)

{¶47} In this case, Stacey testified that Appellant had "grabbed" at her face while on top of her, causing a red mark on her face. The red mark lasted at least until the police arrived. Stacey testified that the officers noticed the mark "right away." She also told the officers that Appellant had "assaulted" her and "punched" her in the face. Scott testified that he heard Stacey yelling for help. The evidence supports a jury's finding that Appellant caused or attempted to cause physical harm, even minor physical harm, to Stacey.

{¶48} Upon review, this is not the exceptional case in which the evidence weighs heavily against the convictions.

{¶49} Appellant's second assignment of error is without merit.

{¶50} **First assignment of error: "The court erred by denying defendant's motion for a mistrial due to prosecutorial misconduct."**

12

Case No. 2024-T-0025

{¶51} Under his first assignment, Appellant argues, first, that the court erred in denying his motion for a mistrial, in which he argued that the State had made improper statements during closing arguments.

{¶52} "A trial court is entitled to broad discretion in considering a motion for a mistrial, and our standard of review is whether the trial court abused its discretion." *State v. Rosebrook*, 2017-Ohio-9261, ¶ 9 (11th Dist.). "The decision to grant a mistrial 'is an extreme remedy only warranted in circumstances where a fair trial is no longer possible and it is required to meet the ends of justice.'" *Id.*, quoting *State v. Bigsby*, 2013-Ohio-5641, ¶ 58 (7th Dist.) "A mistrial will only be granted when the substantial rights of a party are adversely affected." *Id.*

{¶53} We assess prosecutorial misconduct in closing arguments by asking "'whether the remarks were improper and, if so, whether they prejudicially affected [the] substantial rights of the defendant.'" *State v. Hessler*, 90 Ohio St.3d 108, 125 (2000), quoting *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). A conviction may be upheld in the face of a prosecutor's improper remarks when it is "clear beyond a reasonable doubt that the jury would have returned a verdict of guilty" regardless of the comments. *United States v. Hasting*, 461 U.S. 499, 511-512 (1983) (new trial unwarranted despite prosecutor's improper argument because of "overwhelming evidence of guilt and the inconsistency of the scanty evidence tendered by the defendants").

{¶54} Appellant moved for a mistrial after the State, during closing arguments, said that if the jury were to find Appellant not guilty, it would be "giv[ing] him his gun back and let[ting] him go back with Stacey and assault some more women."

13

{¶55} The court did not err in denying Appellant's motion for a mistrial. The court instructed the jury that "the evidence does not include the indictment or the opening statements or the closing arguments of counsel. The opening statements and closing arguments of counsel are designed to assist you. They are not to be considered as evidence." The jury therefore knew or should have known when they deliberated not to rely on the State's statements during closing arguments as evidence. Moreover, there was other sufficient evidence upon which a jury could have found Appellant guilty. "An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. Treesh*, 90 Ohio St.3d 460, 464 (2001). Scott's testimony describing the incident was sufficient for a jury to find Appellant committed Felonious Assault and Domestic Violence. This is not the extreme circumstance in which a fair trial was no longer possible or granting the motion was required to meet the ends of justice.

{¶56} Appellant also argues under his first assignment of error that the court should have declared a mistrial because, he asserts, the State committed prosecutorial misconduct by making certain statements throughout the trial. Appellant argues that the State: (1) during opening arguments, "primes the jury for disbelieving Stacey Simms by telling them she has memory problems;" (2) "tells the jury that they won't even be instructed on self-defense;" (3) "makes several statements which indicate that he and the police are on the same 'team;'" (4) "identifies a technician who works for the Warren Police and did not testify;" (5) "praises Officer Trevor Sumption;" (6) "uses a sarcastic comment (lo and behold) regarding the discovery of the firearm in the 'little red wagon;'" and (7) "uses [Appellant's] former convictions to prove current behavior" by stating that "Appellant

14

is the only person who assaults others," "[w]e know he assaults women," "[w]e know he then shoots people."

**{¶57}** Appellant did not move the trial court for a mistrial based on these statements. Thus, he has waived all but plain error on appeal.

**{¶58}** Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "To prevail under the plain-error standard, a defendant must show that an error occurred, that it was obvious, and that it affected his substantial rights." *State v. Obermiller*, 2016-Ohio-1594, ¶ 62. The requirement that the error must have affected substantial rights means that the error must have affected the outcome of trial. *State v. Rogers*, 2015-Ohio-2459, ¶ 22. "We take '[n]otice of plain error . . . with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Obermiller* at ¶ 62, quoting *State v. Long*, 53 Ohio St.2d 91, 97 (1978).

**{¶59}** In a claim of prosecutorial misconduct, whether based on improper remarks or other conduct, we consider (1) whether the State's remarks or conduct were improper, and if so, (2) whether they prejudicially affected the appellant's substantial rights. *Treesh*, 90 Ohio St.3d at 464. The allegedly improper statements or conduct are evaluated in the context of the entire trial. *Id.* As noted above, improprieties do "not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without" them. *Id.*

**{¶60}** While some of the State's statements may have been improper, none of them prejudicially affected Appellant's substantial rights. In other words, the outcome of the trial would not have been different absent the statements. While many of the

15

statements were biased opinions, the State advocates against the defendant.  Regarding Stacey's testimony, it was the jury's duty to believe or disbelieve her testimony and to determine witness credibility.  *State v. Parker*, 2024-Ohio-2212, ¶ 76 (11th Dist.).  The State's comment that the jury would not be instructed on self-defense is immaterial.  The court did instruct the jury on self-defense.  Moreover, a sarcastic comment such as "lo and behold" does not rise to the level of plain error that would affect the trial's outcome.

{¶61}  Nor did the State's statements that Appellant "assaults women" constitute plain error.  Evidence of Appellant's prior convictions of Domestic Violence were presented to the jury.  The court, before jury deliberations, instructed the jury: "Now, evidence has been admitted that the defendant has been convicted of Domestic Violence.  This evidence was received only for a limited purpose.  It was not received and you may not consider it to prove the character of the defendant in order to show he acted in accordance with that character."  Importantly, Appellant objected to the comments, and the court sustained the objection.  The jury also heard evidence that would support, beyond a reasonable doubt, finding Appellant guilty of Domestic Violence.  Stacey, Scott, and Appellant each testified that Appellant and Stacey had a physical altercation that night.  The officer's body camera video showed Stacey saying that Appellant had punched her in the face, leaving a mark.  For the foregoing reasons, it is clear beyond a reasonable doubt that the jury would have found Appellant guilty even without the improper comments.

{¶62}  Appellant's first assignment of error is without merit.

Case No. 2024-T-0025

{¶63} The judgment of the Trumbull County Court of Common Pleas is affirmed.


MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2024-T-0025